UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEE FOGLE,

        Plaintiff,

v.                  Case No.: 8:19-cv-2896-T-33JSS

IBM CORPORATION, METROPOLITAN
LIFE INSURANCE COMPANY, and
IBM LONG TERM DISABILITY PLAN,

        Defendants.

_____/

**ORDER**

This cause is before the Court pursuant to the Motions to Dismiss Plaintiff's Second Amended Complaint filed by Defendants IBM Corporation and IBM Long Term Disability Plan ("IBM") and Defendant Metropolitan Life Insurance Company ("MetLife"). (Doc. ## 52, 55). Plaintiff Lee Fogle responded on June 12, 2020. (Doc. # 58). IBM filed a reply on June 26, 2020. (Doc. # 65). For the reasons that follow, IBM's Motion is granted in part and denied in part and MetLife's Motion is granted.

**I.  Background**

This Court has already discussed the pertinent underlying allegations in its previous Order on Defendants' motions to dismiss an earlier iteration of Fogle's complaint

and will not repeat them here. (Doc. # 48). In his second amended complaint (Doc. # 51), Fogle has included certain new allegations, including the names of the IBM employees who recruited Fogle, as well as specific details about those recruitment interactions. (Id. at ¶¶ 12, 17). Fogle has added allegations that IBM's administration of the Short Term Disability Plan (the "ST Plan") did not include effective training of his colleagues and supervisors at IBM and similar allegations that IBM failed to properly administer the ST Plan. (Id. at ¶¶ 26, 27, 32).

In addition, Fogle now alleges that IBM and MetLife, separately and jointly, "evaluated the ongoing lawfulness of existing [Long Term Disability Plan (the "Plan")] terms . . . which is an administrative function." (Id. at ¶ 51). Further, according to Fogle, upon this evaluation, neither IBM nor MetLife "detected that the Plan terms" failed to comply with the Americans with Disabilities Act ("ADA") or the Rehabilitation Act of 1973 ("Rehabilitation Act") and failed to properly amend the Plan. (Id. at ¶¶ 54, 55, 90, 92-95). Fogle also now alleges that he is a third-party beneficiary "of the contract between IBM and MetLife that resulted in creation of the Plan." (Id. at ¶ 88).

2

All Defendants have now moved to dismiss the second amended complaint. (Doc. ## 52, 55). The Motions have been fully briefed (Doc. ## 58, 65) and are now ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

As discussed in its prior Order, the Court may properly consider the IBM Long-Term Disability Plan in considering the

Defendants' Motions because the Plan is identified and referenced in the second amended complaint, it is central to Fogle's claims, and the terms of the Plan are not in dispute.

**III. <u>Analysis</u>**

At the outset, the Court notes that IBM and MetLife only attack Counts III, IV, and V of the second amended complaint. The Court will address each in turn.

**A.   <u>Count III (Negligence)</u>**

In Count III of the second amended complaint, Fogle alleges that IBM, "having undertaken to design, offer, and administer the ST Plan for Plaintiff's benefit," therefore owed Fogle a duty to design and administer the ST Plan in a fair and reasonable manner. (Doc. # 51 at ¶ 74). Fogle further alleges that IBM breached that duty by (1) failing to ensure that ST Plan enrollees could utilize the ST Plan in a "safe" manner, "including by failing to provide mental health-specific resources for navigating enrollment in and return to active employment from the ST Plan"; (2) failing to "segregate" Fogle from his colleagues and work pressures while he was enrolled in the ST Plan; and (3) delaying or underpaying benefits owed to Fogle under the ST Plan and delaying his enrollment in the long-term Plan. (<u>Id.</u> at ¶ 75). Importantly, Fogle alleges that those breaches caused him:

> severe financial, physical, and emotional injuries
> . . . such as difficulty sleeping, panic attacks,
> anxiety, shame, and depression. Moreover, these
> breaches were so reckless as to constitute a
> conscious disregard or indifference to the rights,
> safety, and privacy of Plaintiff and, more broadly,
> employees and other invitees of IBM.

(Id. at ¶ 76).

IBM moves to dismiss the negligence claim pursuant to Florida's impact rule, which requires that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injury sustained in an impact." Rowell v. Holt, 850 So. 2d 474, 477-478 (Fla. 2003). Specifically, Florida's impact rule "bars a claim for mental or emotional damages caused by a defendant's negligence unless (1) the plaintiff sustained a physical impact from an external source, (2) the claim arises from a situation in which the 'impact' requirement is relaxed and the plaintiff manifests a significant discernible physical injury or illness as a result of the emotional trauma, or (3) one of the narrow exceptions to the impact rule applies rendering the rule inapplicable." Pipino v. Delta Air Lines, Inc., 196 F. Supp. 3d 1306, 1315 (S.D. Fla. 2016) (citing Fla. Dep't of Corr. v. Abril, 969 So. 2d 201, 206 (Fla. 2007)).

Here, Fogle has not alleged any physical impact that touched or entered Fogle's body. Compare <u>Willis v. Gami Golden Glades, LLC</u>, 967 So. 2d 846, 850-51 (Fla. 2007) (holding that the victim of a mugging, where the gunman pressed the gun to the victim's temple and touched her body searching for her belongings, could recover damages for her emotional distress). Rather, Fogle's symptoms of "difficulty sleeping, panic attacks, anxiety, shame, and depression" resulted from IBM's actions such as "email and telephone chains and conversations." (Doc. # 51 at ¶ 27). Without a physical impact from an external source, Fogle cannot recover any damages for his mental or emotional distress.

While Fogle alleges that he has suffered "severe . . . physical . . . injuries," he does not detail what these injuries are. Physical symptoms, such as difficulty sleeping and the panic attacks that Fogle alleges, are not equivalent to physical injury or illness. See <u>Pipino</u>, 196 F. Supp. 3d at 1318 (holding that panic attacks are not physical injuries and while they may be manifested by physical symptoms, "a physical *symptom* is not equivalent to a physical *injury or illness*, let alone a 'significant discernible physical injury'" (emphases in original)); see also <u>Faurote v. United States</u>, No. 8:17-cv-2317-T-36CPT, 2018 WL 3417113, at *3

(M.D. Fla. July 13, 2018) (finding allegations insufficient to demonstrate that plaintiff "manifested some physical injury or illness as a result of emotional trauma" because "there are no details regarding what caused her pain or the type of pain she suffered").

Florida law has multiple exceptions to the impact rule. These exceptions, however, arise only in a "very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale undergirding the application of the impact rule." Rowell, 850 So. 2d at 478. For example, the Florida Supreme Court has not applied the impact rule in cases of intentional torts such as defamation or intentional infliction of emotional distress, nor in cases involving "freestanding" torts such as wrongful birth, nor to cases involving the release of sensitive personal information. See Id. at 478 n.1; Abril, 969 So. 2d at 207-08; Kush v. Lloyd, 616 So. 2d 415, 422 (Fla. 1992).

In his response, Fogle raises three arguments in support of his negligence claim. Only one is meritorious.

Fogle argues that he has pleaded reckless and wanton conduct, and that "Florida's impact rule does not apply to cases where the tortfeasor's negligence may be characterized

as willful and wanton." (Doc. # 58 at 10) (citing Brady v. SCI Funeral Servs. of Fla., Inc., 948 So. 2d 976, 978 (Fla. 1st DCA 2007)). In Brady, a mother was placing a pinwheel on the burial site of her infant son. Id. at 977. While placing the pinwheel, the mother touched her infant son's coffin which was barely below the surface of the soil, in violation of Florida's burial laws. Id. at 977-78. The court held that the plaintiffs did not need to plead a separate claim for "gross negligence" or "tortious interference with a dead body" when they alleged in their negligence claim that the cemetery's actions were willful and intentional. Id. at 978, 979 (remanding for a jury finding as to whether the cemetery's actions were willful and wanton, such that "the negligence action would fall outside the impact rule").

The facts in Brady are vastly different from the facts in the instant case. While the alleged emotional distress in Brady stemmed from a cemetery's neglectful treatment of the body of a baby entrusted to it by the parents, Fogle and IBM's relationship is merely a business relationship. Fogle has failed to point this Court to any case law supporting his argument that conduct in such circumstances, even if willful and wanton, warrants an exception to the impact rule. Additionally, willful and wanton conduct is typically

understood as the sort of "outrageous" conduct that could support an intentional infliction of emotional distress claim. See Williams v. City of Minneola, 619 So. 2d 983, 986-87 (Fla. 5th DCA 1993) (drawing a parallel between statutory language regarding "wanton and willful" conduct and the sort of reckless, outrageous conduct required to support a claim for intentional infliction of emotional distress). Yet this Court has already determined that IBM's treatment of Fogle was not sufficiently "outrageous conduct" to support an intentional infliction of emotional distress claim. (Doc. # 48 at 17-20).

Fogle also alleges that his pleadings satisfy an exception to Florida's impact rule where "emotional distress damages are the most obvious and immediately foreseeable damages that would flow from the specific conduct pled to be negligent." (Doc. # 58 at 11). The cases Fogle cites in support, however, are easily distinguishable.

In Abril, an individual's HIV test results were improperly disseminated in contravention of state law. 969 So. 2d at 203. The plaintiff claimed that this negligent breach of confidentiality resulted in mental anguish and emotional distress. Id. Under those circumstances, the Florida Supreme Court declined to apply the impact rule

because emotional distress damages were the "only reasonable damages" resulting from violation of the privacy statute and because such emotional damage was "akin to that suffered by victims of defamation or invasion of privacy." Id. at 207-08.

In Rowell, an innocent man was arrested for two counts of felon in possession of a firearm. Rowell, 850 So. 2d at 476. The man sued the Office of the Public Defender for legal malpractice after alleged errors by the Office resulted in him serving an additional ten days in jail. Id. at 477. The Florida Supreme Court held that the impact rule should not bar recovery of non-economic damages in that case due to the attorney-client relationship and the "clear foreseeability of emotional harm resulting from a protracted period of wrongful pretrial incarceration." Id. at 479.

Fogle's "mental health damages" that were caused by IBM's allegedly negligent administration of an employee benefit plan are a far cry from either of the situations described above. The Court does not find these cases persuasive because, in the context of a business relationship in which an employer offers certain disability benefits to its employees, the Court cannot discern any sort of clearly foreseeable emotional damages flowing from the employer's

allegedly negligent management of the benefits plan. Nor has Fogle cited any case law in which any court has made such a foreseeability determination. Accordingly, Fogle has failed to demonstrate that this case falls within the "narrow" class of exceptions that courts have carved out of the impact rule.

Finally, Fogle alleges that his negligence claim independently pleads financial damages to which the impact rule "assuredly does not apply." (Doc. # 58 at 10); see also (Doc. # 51 at ¶ 76) (alleging that Fogle had suffered "severe financial" injuries due to IBM's negligent actions). Fogle explains that IBM's negligence in connection with the ST Plan "caused and exacerbated disabling conditions that have left Plaintiff disabled from earning a living in his or any profession." (Doc. # 58 at 10). Fogle, however, fails to cite any case law to support this argument. And the Court agrees with IBM that Fogle's "disabling conditions" are psychological in nature and, thus, any alleged financial damages that are based on purely psychological injuries are not compensable.[1] (Doc. # 65 at 2). Setting aside the impact

---

[1] This includes Fogle's claim that IBM was negligent for failing to properly "segregate" him from his supervisors, colleagues, and work responsibilities at IBM while Fogle was on the ST Plan. As explained in its prior Order, these actions have nothing to do with the way IBM ran the ST Plan. (Doc. # 51 at 23-24).

rule under such circumstances would allow the exception to swallow the rule.

However, in its prior Order, the Court acknowledged that, having offered the ST Plan to employees, IBM had a duty to administer it fairly. (Doc. # 48 at 23). Further, to the extent Fogle alleged that IBM failed to provide Fogle with "mental health-specific resources for navigating enrollment in the [ST Plan]" or that he was underpaid benefits due to him under the ST Plan, the Court held that such allegations "could plausibly come under the umbrella of IBM's duty of care with respect to its administration and management" of the ST Plan. (Id. at 23-24). By its very terms, the impact rule serves to bar damages flowing from emotional or mental distress or injury. But the conduct described above – failing to provide certain resources and underpaying benefits due under the plan – are purely financial in nature. Fogle could have encountered this conduct whether he was enrolled in the ST Plan for a mental disability or a broken leg. Thus, the Court concludes that, to the extent Fogle alleges pure financial injury, his negligence claim survives. See Hogan v. Provident Life & Acc. Ins. Co., 665 F. Supp. 2d 1273, 1285 (M.D. Fla. 2009) (holding that plaintiff sufficiently pled negligence claim arising from insurer's negligent handling of

his disability claim because insurer had duty under the undertaker's doctrine, breached that duty by, inter alia, terminating the insured's benefits solely for financial reasons, and plaintiff pled particular injuries, including payment of past due disability payments, that were caused by the breach); see also Muchnick v. Goihman, 245 So. 3d 978, 981 (Fla. 3d DCA 2018) (holding that once realty agent promised to fix problems in the plaintiff' apartment and managed those repairs, he had a duty to exercise reasonable care in making the repairs and remanding for further proceedings to determine, among other things, the total amount of monetary damages incurred by plaintiffs, including rent reimbursement and out-of-pocket expenses).

In sum, Florida's impact rule forecloses Fogle's negligence claim, except to the extent Fogle seeks purely financial damages stemming from IBM's administration of the ST Plan, as described in this Order. All other grounds alleged in Count III fail to state a claim and are dismissed without prejudice.

### B.   Count IV (Negligent Training)

Fogle alleges that IBM negligently failed to adequately train "(1) ST Plan administrators; and (2) Plaintiff's fellow IBM employees – in particular his supervisors – as to how IBM

employees should engage with, or not engage with, colleagues who are or were enrolled in the ST Plan generally and/or due to disabling neurological and mental health issues." (Doc. # 51 at ¶ 80). In its Motion to Dismiss, IBM argues that Fogle failed to state a claim for negligent training because he did not identify a training program or policy (Doc. # 52 at 10-11), and because Florida's impact rule bars recovery as it did for Count III. (Id. at 12).

Fogle responds that IBM "expressly delineated a communications policy between ST Plan enrollees and Defendant IBM" in its ST Plan Summary Plan Description. (Doc. # 58 at 13-14). Specifically, Fogle points to the following provision of the Summary Plan Description that provides in pertinent part:

> **2.3  How the Plan Works**
> . . .
> While you are recovering from an illness or injury, you must advise your manager in advance if you will be away from your place of residence for more than five consecutive days and provide a telephone number where you can be reached.
> Whether you are at home or elsewhere, you must report to IBM either in person, by phone or by letter at least once a week. In addition, to continue receiving STD Income payments, you must when requested, furnish a physician's statement . . . indicating the reason that continued absence is necessary and provide medical justification acceptable to IBM.

(Id. at 13; Doc. # 55-1 at 12).

Based on this provision, Fogle argues there is a "reasonable inference" that ST Plan enrollees "are not to be in an office setting"[2] and may remove themselves from daily contact with their supervisors at IBM. (Doc. # 58 at 13-14).

Under Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents. Lewis v. City of St. Petersburg, 260 F.3d 1260, 1265 (11th Cir. 2001) (citing McFarland & Son, Inc. v. Basel, 727 So. 2d 266 (Fla. 5th DCA 1999)). "Negligent training occurs when an employer was negligent in the implementation or operation of [a] training program." Gutman v. Quest Diagnostics Clinical Labs., Inc., 707 F. Supp. 2d 1327, 1332 (S.D. Fla. 2010) (citing Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005)). As with other negligence claims, "the conventional elements of duty, breach, causation, and damages must be shown in negligent training claims." Harrison v. Red Bull Distr. Co., Inc., No. 2:19-cv-17-FtM-99MRM, 2019 WL 1117022, at *2 (M.D.

---

[2] The second amended complaint alleges that, while enrolled in the ST Plan, Fogle's colleagues and supervisors did not properly segregate him from "active employment tasks and communications" and "repeatedly involved [him] in email and telephone chains and conversations regarding workplace initiatives." (Doc. # 51 at ¶ 27). There is no indication in the second amended complaint that Fogle was forced to physically appear in the office while enrolled in the ST Plan.

Fla. Mar. 11, 2019). A plaintiff bringing such a claim must allege that he was harmed as a result of the employer's failure to adequately train an employee, and that the nature of the employment put the plaintiff in a "zone of risk" such that the employer had a duty running to the plaintiff. Id.

As an initial matter, Fogle does not identify an IBM training program or policy in his second amended complaint. In fact, the second amended complaint does not mention Section 2.3 of the Summary Plan Description, on which Fogle now relies. See (Doc. # 51). Moreover, Section 2.3 of the Summary Plan Description does not govern the way IBM employees must interact with individuals enrolled in the ST Plan; rather, it governs how enrollees must interact with their supervisors at IBM. Accordingly, the Court agrees with IBM that Fogle impermissibly attempts to extract a far broader policy from this language than that which the language supports.

Typically, an employer's "duty" for purposes of a negligent training claim arises when (1) the employer affirmatively imposes some obligation on itself by adopting a training program or policy, or (2) when a duty is imposed by law. See, e.g., Archer v. Wal-Mart Stores East, LP, No. 8:16-cv-3067-T-36AAS, 2019 WL 3254022 at *4 (M.D. Fla. July 19, 2019)(finding that Wal-Mart had a duty to properly train

employees involved with shoplifting monitoring because it had implemented a receipt checking policy); Adler v. WestJet Airlines, Ltd., 31 F. Supp. 3d 1381, 1388 (S.D. Fla. 2014) (allowing the flight passenger's negligent training claim against the airline for failing to accommodate service dogs to proceed because of the airline's legal obligation to accommodate service dogs). Fogle has made no such showing here.

But more importantly, to state a claim for negligent training, Fogle must show that IBM was negligent in the implementation of a training program and that this negligence was sufficiently connected to his purported damages. See Doe v. Carnival Corp., No. 1:20-CV-20737-UU, 2020 WL 3772102, at *4 (S.D. Fla. June 26, 2020) ("Negligent training occurs when an employer was negligent in the implementation or operation of the training program and this negligence caused a plaintiff's injury."). Here, Fogle has not alleged a sufficient connection between what his supervisors did or did not do while he was enrolled in the ST Plan and what IBM trained his supervisors to do. In other words, even if his supervisors were treating Fogle badly, there is no allegation or reasonable inference that this conduct was based on some failure on the part of IBM to train them. See Harrison, 2019

WL 1117022, at *2 (explaining that plaintiffs must show causation as part of negligent training claim and that plaintiffs must allege that they were harmed as a result of the employer's failure to adequately train an employee). Without such an allegation, Fogle's negligent training claim necessarily fails.

Accordingly, Count IV is dismissed without prejudice.

### C.   Count V (ERISA claim)

Fogle alleges Count V against both IBM and MetLife. In his second amended complaint, Fogle has amended his ERISA allegations as follows. First, Fogle now claims that he is a "third-party beneficiary of the contract between IBM and MetLife that resulted in creation of the Plan, as Plaintiff was among the class of individuals . . . for whom that contract and the resulting Plan was to primarily and directly benefit." (Doc. # 51 at ¶ 88). Fogle alleges that IBM and MetLife (as a functional fiduciary) breached their fiduciary duties under ERISA by "failing to reasonably evaluate" the Plan terms on an ongoing basis to ensure they were in compliance with federal law and then failing to "amend or interpret the Plan" to correct those alleged deficiencies or illegalities in the Plan. (Id. at ¶¶ 90-92, 95). According to Fogle, IBM "administers the Plan in continuing reliance on

MetLife's incorrect evaluation that the Plan . . . is administrable in a lawful, non-ERISA, non-ADA, non-Rehabilitation-Act violating manner." (<u>Id.</u> at ¶ 90). Fogle contends that "routine evaluation" of and/or failure to amend the Plan is an administrative function. (<u>Id.</u> at ¶¶ 95, 98).

Fogle also offers two alternative theories of ERISA liability. First, that MetLife and IBM's alleged failure to reasonably evaluate the legality of the Plan's terms "constitutes an act or practice that may be challenged under ERISA [Section] 502(a)(3) regardless of whether that 'act or practice' was undertaken by a Plan fiduciary." (<u>Id.</u> at ¶ 92). Second, MetLife's conduct in recommending and continuing to "influence" IBM to administer an allegedly unlawful plan constituted a breach of the contract between IBM and MetLife, a contract "of which [Fogle] was an intended beneficiary." (<u>Id.</u> at ¶ 93).

Fogle's claim once again relies on 29 U.S.C. §§ 1104(a) and 1144(d). (<u>Id.</u> at ¶¶ 91, 95). Fogle continues to seek an order reforming the Plan to exclude bipolar disorder or all biologically-based mental illnesses from the Plan's 24-month benefits limitation for "mental or nervous disorder or disease," among other relief. (<u>Id.</u> at ¶ 96).

In its response, IBM argues that Count V does not state a claim for violation of 29 U.S.C. § 1132(a)(3) because Fogle does not claim that either of the Defendants violated the Plan terms by including bipolar disorder within the Plan's limitation. (Doc. # 52 at 12). Further, Section 1144(d) of ERISA does not provide a free-standing cause of action, so Fogle's allegations that the ST Plan invalidates or impairs portions of the ADA and Rehabilitation Act are therefore invalid. (Id. at 13). IBM also avers that "undertaking to evaluate" and/or amendment of a Plan are not acts that can be challenged under ERISA and that Fogle's claim must fail because ERISA does not require the Plan to provide benefits to Fogle beyond the 24-month limitation found in the Plan, nor do they prohibit the Plan from including that limitation. (Id. at 13-14).

For its part, MetLife once again moves to dismiss Count V – the sole count against it – with prejudice for failure to state a claim. (Doc. # 55). MetLife argues that Fogle fails to state a claim in Count V because MetLife had no fiduciary role in the drafting or amendment of the Plan. (Id. at 8). Regarding Fogle's Section 1104(a) claim, MetLife argues that Fogle has failed to allege that MetLife breached a fiduciary

duty and violated administrative or management duties of the Plan. (Id. at 10).

## 1. Section 1144(d)

For the same reasons the Court stated in its previous Order dismissing this claim, Section 1144(d) does not support Fogle's ERISA claim. (Doc. # 48 at 28). Again, Fogle has not directed the Court to any legal authority stating that Section 1144(d) provides a free-standing cause of action under ERISA, and he does not bring a claim under the ADA or the Rehabilitation Act.

## 2. Section 1104(a)

Section 1104(a) sets forth certain requirements as to fiduciary duties. Specifically, it provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" by, among other things, acting with skill, care, and diligence and acting with the "exclusive purpose" of providing benefits to participants and beneficiaries. 29 U.S.C. § 1104(a). Administration of an ERISA plan is a recognized fiduciary duty. Ehlen Floor Covering, Inc. v. Lamb, 660 F.3d 1283, 1287 (11th Cir. 2011).

Recognizing that this Court has already rejected his Plan design claim, Fogle is careful to couch the allegations

in his second amended complaint as those attacking the
administration of the Plan by IBM and MetLife. Fogle's
attempts, however, are unavailing. Fogle's current
allegations once again essentially amount to his dislike of
the Plan's 24-month lifetime cap on benefits for certain
illnesses, including bipolar disorder. They are the same
allegations and the same essential claim, wrapped in
different clothing. And it similarly fails for the reasons
discussed in this Court's prior Order.

Moreover, Fogle does not effectively allege that the
Defendants violated their duty to administer the ST Plan.
First, Fogle provides no support for his claim that Defendants
had a duty to routinely evaluate the Plan post-design, and
that their failure to do so is actionable under ERISA. Rather,
as stated above, these allegations relate to and are proxy of
Fogle's previously dismissed Plan design claim.

Second, as to Fogle's claim that Defendants had a duty
to amend the Plan, the adoption, design or amendment of a
plan is not a discretionary act of plan administration.
Chaudhry v. Neighborhood Health P'ship, Inc., 178 F. App'x
900, 902 (11th Cir. 2006). If plan amendment is not
categorized as plan administration, the failure to perform
certain amendments likewise cannot be categorized as a breach

of fiduciary obligation. See Id. ("[A] plan sponsor's decision to amend a plan in a way that deprives participants of benefits does not give rise to a cognizable claim under ERISA."). As in Chaudhry, Fogle does not allege that there was any defect in the procedures used to amend the Plan, and dismissal is proper. See Id.

### 3. "Stand-alone" claim

Fogle also advocates for a "stand-alone" Section 1132(a)(3) claim regardless of whether there was an act or practice undertaken by a plan fiduciary. (Doc. # 58 at 16-17). In support, Fogle cites to Ritchie v. Industrial Steel, Inc., No. 6:08-cv-1201-Orl-22KRS, 2008 WL 11335097, at *1-2 (M.D. Fla. Nov. 4, 2008). (Id. at 17 n.10). In Ritchie, a truck driver alleged his employer fired him in order to terminate his employee welfare benefits, in violation of 29 U.S.C. § 1140. Id. The employer moved to dismiss the claim because it was "incredibly vague," arguing that the truck driver was required to "specifically identify the ERISA plan at issue, as well as specifically allege how he is a qualified beneficiary under that particular plan." Id. at *2. The court denied the employer's motion to dismiss this claim, explaining that the detailed facts sought by the employer were not required. Id. (explaining that plaintiff had clearly

alleged he was the beneficiary of an ERISA plan, that he was discharged for the purpose of interfering with his right to collect benefits, and that "[a]ny more specific information can be obtained" through discovery).

Unlike in Ritchie, Fogle does not bring an interference-with-benefits claim under ERISA Section 1140. Moreover, IBM and MetLife do not challenge Fogle's qualification as a beneficiary. (Doc. # 52; Doc. # 55). More importantly, Fogle has not provided any further support for his assertion that there exists a "stand-alone" ERISA claim outside of the fiduciary context under this statute. Under such circumstances, the Court declines to find such a stand-alone claim.

Finally, Fogle raises in his response an argument that he has an ERISA claim "arising out of his prolonged, damaging efforts to enroll in the Plan." (Doc. # 58 at 17). But Fogle nowhere explains or alleges how these efforts or the alleged two-month delay in enrollment, constitute either a violation of Plan terms or a violation of ERISA, as required to be actionable under 29 U.S.C. § 1132(a)(3). Nor does Fogle allege that he failed to receive benefits that were due and owing to him under the Plan, as it is written.

For these reasons, Fogle once again fails to state a claim under Section 1132(a)(3) of ERISA.[3]

### 4.    Fogle as Third-Party Beneficiary

Fogle alleges in the second amended complaint that he is a third-party beneficiary. (Doc. # 51 at ¶ 88). Fogle has not attached any contract of which he was allegedly the beneficiary nor has he provided this Court with any legal authority to support his third-party beneficiary theory. For these reasons, he cannot proceed under this theory.

In sum, Fogle has again failed to state a claim under ERISA. This is Fogle's third such attempt to state a cause of action under ERISA. Under these circumstances, the Court agrees with Defendants that the ERISA claim is due to be dismissed with prejudice. Accordingly, Count V is dismissed with prejudice.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

---

[3] In addition, as MetLife points out in its Motion, MetLife's stated fiduciary duties under the Plan are limited to the review of claims denials. See (Doc. # 55 at 5, 8). Fogle claims that MetLife is a functional fiduciary with respect to a broader swath of fiduciary duties, including Plan administration. (Doc. # 51 at ¶ 90). The Court need not comment on this dispute because, even accepting Fogle's argument, Fogle's ERISA claim fails for the reasons stated in this Order.

(1)  Defendants IBM Corporation and IBM Long Term Disability Plan's Motion to Dismiss (Doc. # 52) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. Defendant Metropolitan Life Insurance Company's Motion to Dismiss (Doc. # 55) is **GRANTED.**

(2)  Count III of the second amended complaint is dismissed without prejudice, except to the extent outlined in this Order. Count IV of the second amended complaint is dismissed without prejudice. Count V of the second amended complaint is dismissed with prejudice.

(3)  Defendant IBM is directed to file its answer to the remaining claims in the second amended complaint within 14 days of the date of this Order.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>24th</u> day of July, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE